UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SUMMONS ISSUED
CV 13
4319
DEARIE, J.

------------------------------------------

DONRICK PASCAL,

                              Plaintiff,    **COMPLAINT**

          -against-

THE CITY OF NEW YORK; P.O. GAREN IGITYAN,
Shield # 20418; P.O. STOKES; and P.O.          ECF Case
JOHN DOES # 1-10; the individual
defendant(s) sued individually and in          Jury Trial Demanded
their official capacities,

                              Defendants.

AZRACK, M.J.

---------------------------------------- X

### PRELIMINARY STATEMENT

     1.    This is a civil rights action in which plaintiff

seeks relief for the violation of plaintiff's rights secured by

42 U.S.C. § 1983; and the Fourth, Fifth, Sixth, and Fourteenth

Amendments to the United States Constitution.  Plaintiff's

claims arise from an incident that arose on or about February

26, 2012.  During the incident, the City of New York, and

members of the New York City Police Department ("NYPD")

subjected plaintiff to, among other things: unlawful search and

seizure; false arrest; unreasonable force; failure to intervene;

malicious prosecution; denial of a fair trial; and

implementation and continuation of an unlawful municipal policy,

practice, and custom.  Plaintiff seeks compensatory and punitive

damages, declaratory relief, an award of costs and attorney's fees, pursuant 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2.    This action is brought pursuant to 42 U.S.C. § 1983, and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

3.    Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

4.    Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in Kings County, and the City of New York is subject to personal jurisdiction in the Eastern District of New York.

## PARTIES

5.    Plaintiff Donrick Pascal is African American, and a resident of the State of New York, Kings County.

6.    At all times alleged herein, defendant City of New York was a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

7.    At all times alleged herein, defendants P.O. Garen Igityan, Shield # 20418, P.O. Stokes, and P.O. John Does # 1-5 were New York City Police Officers employed with Transit

2

Bureau 32 and/or 850 Command, Brooklyn, New York, located in
Brooklyn, New York or other as yet unknown NYPD assignment, who
violated plaintiff's rights as described herein.

8.   The individual defendants are sued in their
individual and official capacities.

### STATEMENT OF FACTS

**The Incident**

9.   On February 26, 2012, in the vicinity of the
Grand Army Plaza Subway Station (2/3 Line), Brooklyn, New York,
and Transit Bureau 32 and/or 850 Command, Brooklyn, New York,
several police officers operating from Transit Bureau 32 and/or
850 Command, Brooklyn, New York, including upon information and
belief, defendants P.O. Igityan, P.O. Stokes, and P.O. John Does
# 1-5, at times acting in concert, and at times acting
independently, committed the following illegal acts against
plaintiff.

10.   On February 26, 2012, at approximately 12:45 p.m.
in the vicinity of the Grand Army Plaza Subway Station (2/3
Line), Brooklyn, New York, P.O. Igityan, P.O. Stokes, and P.O.
John Does # 1-5, without either consent, an arrest warrant, a
lawful search warrant, probable cause, or reasonable suspicion
that plaintiff (or any third person) had committed a crime
unlawfully arrested plaintiff.

3

11.  Donrick was traveling on the subway and fell asleep and missed his stop.

12.  Donrick woke up when he noticed the subway was not moving.

13.  The defendant officers, who were dressed in police uniforms, were holding the subway car doors open.

14.  The police signaled to Donrick to come to them.

15.  Donrick walked to them.

16.  The police told Donrick to leave the subway car.

17.  Donrick left the subway car.

18.  The subway left.

19.  The police told Donrick they had him leave the subway car because his bag was on a seat and the subway car was crowded.  Neither statement was true.

20.  The police asked Donrick for his identification and asked him if he had any warrants.

21.  Donrick produced his identification and told them that he had no warrants.

22.  The police ran Donrick's name for warrants, and verified that there were none.

23.  Donrick sat on a bench.

4

24.    As Donrick waited for the police to issue what he believed would be a summons and reached into his pocket to get his phone.

25.    P.O. Stokes told Donrick to take his hands out of his pockets.

26.    Donrick did so.

27.    Another police officer demanded that Donrick put the phone away, and grabbed the phone.

28.    The other police rushed Donrick.

29.    The police grabbed, yanked and bent Donrick's arms.

30.    The police jumped on and pinned Donrick.

31.    The police twisted Donrick's arms and placed excessively tight handcuffs on his wrists.

32.    After Donrick was handcuffed he complained, and one officer grabbed Donrick by the hood of his jacket and flung him around.

33.    The officer was trying to throw Donrick onto concrete platform.

34.    When Donrick did not fall, the police pinned Donrick against the bench.

35.    The police intentionally placed the handcuffs on too tight, and Donrick when complained they refused to loosen them.

36.    The police searched Donrick's bag, and when he complained, one officer said: You gave up your freedom.

37.    The police kept Donrick on the platform and refused to provide him with their names and badge numbers.

38.    The police told him to shut up.

39.    The police transported Donrick to the 32nd Transit District where they processed his arrest.

40.    Eventually, the police transported plaintiff to Central Booking for arraignment, and he was released.

41.    In order to cover up their illegal actions, the police, including P.O. Igityan, pursuant to a conspiracy, initiated, and falsely and maliciously told the Kings County District Attorney's Office that the plaintiff had committed various crimes, including resisting arrest and disorderly conduct charges.

42.    The defendant officers made these false allegations, despite the fact that they had no evidence that plaintiff had committed a crime, to cover up their misconduct, to retaliate against plaintiff, to meet productivity goals and quotas, and to justify overtime expenditures.

6

43.    Upon information and belief, the unlawful actions against plaintiff were also based on profiling or racial indifference.

44.    The criminal case against plaintiff was dismissed in its entirety, with the resisting arrest charge terminating in his favor on or about October 25, 2012, and the disorderly conduct charges terminating in his favor on or about December 10, 2012.

**General Allegations**

45.    The individual defendants acted in concert committing the above-described illegal acts toward plaintiff.

46.    Plaintiff did not violate any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above incidents.

58.    At no time prior to, during or after the above incidents were the individual defendants provided with information, or in receipt of a credible or an objectively reasonable complaint from a third person, that plaintiff had violated any law, regulation, or administrative code; committed any criminal act; or acted in a suspicious or unlawful manner prior to or during the above incidents.

7

59.   The defendants acted under pretense and color of state law and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of their rights.

60.   As a direct and proximate result of defendants' actions, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

61.   Plaintiff is entitled to receive punitive damages from the individual defendants because the individual defendants' actions were motivated by extreme recklessness and indifference to plaintiff's rights.

### FIRST CLAIM

### (UNLAWFUL SEARCH AND SEIZURE UNDER FEDERAL LAW)

62.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

63.   Defendants unlawfully stopped and searched plaintiff without cause or consent.

63.   Accordingly, defendants are liable to plaintiff for unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## SECOND CLAIM

### (FALSE ARREST UNDER FEDERAL LAW)

64.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein

65.   Defendants falsely arrested plaintiff without consent, an arrest warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

66.   Accordingly, defendants are liable to plaintiff for false arrest under 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

## THIRD CLAIM

### (UNREASONABLE FORCE)

67.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

68.   The individual defendants' use of force upon plaintiff was objectively unreasonable.

69.   The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiff, since plaintiff was unarmed, compliant, and did not resist arrest.

9

70.   Those defendants who did not touch plaintiff, witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

71.   Accordingly, the defendants are liable to plaintiff for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

## FOURTH CLAIM

### (FAILURE TO INTERVENE)

72.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

73.   Defendants had a reasonable opportunity to prevent the violations of plaintiff's constitutional rights, but they failed to intervene.

74.   Accordingly, the defendants are liable to plaintiff for failing to intervene to prevent the violation of plaintiff's constitutional rights.

## FIFTH CLAIM

### (MALICIOUS PROSECUTION CLAIM UNDER FEDERAL LAW)

63.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

64.   The individual defendants are liable to plaintiff for malicious prosecution because, pursuant to a conspiracy and

acting with malice, the defendants initiated a malicious prosecution(s) against plaintiff by knowingly, intentionally, and maliciously providing false statements (including signed complaints and police reports) to prosecutors and/or the court(s), which alleged plaintiff had committed various crimes.

65.   The individual defendants lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

66.   The individual defendants acted to cover up their illegal and unconstitutional conduct by initiating the above-stated malicious prosecution(s).

67.   The above-stated malicious prosecution(s) caused a sufficient post-arraignment liberty restraint on plaintiff.

## SIXTH CLAIM

### (DENIAL OF FAIR TRIAL)

68.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

69.   The defendants are liable to plaintiff because they intentionally conspired to fabricate evidence against plaintiff, depriving plaintiff of liberty without due process of law.

11

70.    Furthermore, the defendants violated the law by making false statements by drafting and/or signing a sworn criminal court complaint and false police reports.

71.    Furthermore, the individual defendants violated the law by manipulating evidence to obtain a prosecution and unjust conviction, while performing the function of investigators.

72.    The individual defendants were on notice that creating fabricated evidence is a clear violation of law because it well established that individuals who knowingly use false evidence at trial to obtain a conviction act unconstitutionally and is redressable in an action for damages under 42 U.S.C. § 1983.

73.    The individual defendants are also liable to plaintiff because they intentionally created false information likely to influence a fact finder's or jury's decision by, *inter alia*, forwarding false information to prosecutors, drafting and signing a sworn criminal court complaint and police reports, omitting and/or manipulating evidence, fabricating testimony and evidence, suppressing and concealing exculpatory material and evidence, and forwarding and presenting false information to a court thereby violating plaintiff's constitutional right to a fair trial, and the harm occasioned by such an unconscionable

12

action is redressable in an action for damages under 42 U.S.C. §
1983.

### SEVENTH CLAIM

### (MONELL CLAIM)

74.    Plaintiff repeats and realleges all the foregoing
paragraphs as if the same were fully set forth at length herein.

75.    Defendant City of New York, through a policy,
practice and custom, directly caused the constitutional
violations suffered by plaintiff.

76.    Defendant City of New York through the NYPD and
its officers, committed the following unconstitutional
practices, customs and policies against plaintiff: (1)
wrongfully arresting innocent persons in order to meet
productivity goals; (2) wrongfully arresting individuals based
on pretexts and profiling; (3) using unreasonable force on
individuals; and (4) fabricating evidence against innocent
persons.

77.    Upon information and belief, defendant City of
New York, at all relevant times, was aware that the defendants
were unfit officers who have previously committed the acts
alleged herein, have a propensity for unconstitutional conduct,
or have been inadequately trained.

78.   Nevertheless, defendant City of New York exercised deliberate indifference by failing to take remedial action.  The City failed to properly train, retrain, supervise, discipline, and monitor the individual defendants and improperly retained and utilized them.  Moreover, upon information and belief, defendant City of New York failed to adequately investigate prior complaints filed against the individual defendants.

79.   Further, defendants City of New York was aware prior to the incident that the individual defendants (in continuation of its illegal custom, practice and/or policy) would stop, arrest and prosecute innocent individuals, based on pretexts and false evidence.

80.   The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct involving the individual defendants, placing the defendant City of New York on notice of the individual defendants' propensity to violate the rights of individuals.

81.   In addition to frequently violating the civil rights of countless residents of New York City, numerous members of the NYPD commit crimes. Officers have been arrested and convicted of such crimes as planting evidence on suspects,

14

falsifying police reports, perjury, corruption, theft, selling narcotics, smuggling firearms, robbery, fixing tickets, driving under the influence of alcohol, vehicular homicide, assault and domestic violence. In fact, former NYPD Commissioner Bernard Kerik was convicted of corruption-related crimes in federal and state court and served time in federal prison. In 2011, Brooklyn South narcotics officer Jerry Bowens was convicted of murder and attempted murder in Supreme Court, Kings County, while under indictment for corruption and is presently serving a life sentence. In 2011, Police Officer William Eiseman and his subordinate Police Officer Michael Carsey were convicted of felonies in Supreme Court, New York County, for lying under oath, filing false information to obtain search warrants and performing illegal searches of vehicles and apartments. In 2012, New York City Police Officer Michael Pena was convicted in Supreme Court, New York County, of raping and sexually assaulting a woman at gunpoint and is presently serving a sentence of 75 years to life.

82.    Additionally, the existence of the aforesaid unconstitutional customs and polices of profiling minorities, may be inferred from an analysis of the NYPD conducted by the New York Civil Liberties Union ("NYCLU"). The NYCLU's analysis revealed that more than 2 million innocent New Yorkers were

subjected to police stops and street interrogations from 2004
through 2011, and that black and Latino communities continue to
be the overwhelming target of these tactics.   Nearly nine out of
10 stopped-and-frisked New Yorkers have been completely
innocent, according to the NYPD's own reports.

83.   In August 2009, Proffer Levine released a report
entitled *The Epidemic of Pot Arrests in New York City*, which
stated: Perhaps most appalling is who the police are arresting
for marijuana possession.   United States government studies have
consistently found that young whites use marijuana at higher
rates than do young blacks or Latinos. But the NYPD has long
arrested young blacks and Latinos for pot possession at much
higher rates than whites. In 2008, blacks were about 26% of New
York City's population, but over 54% of the people arrested for
pot possession. Latinos were about 27% of New Yorkers, but 33%
of the pot arrestees. Whites were over 35% of the City's
population, but less than 10% of the people arrested for
possessing marijuana. In 2008, police arrested Latinos for pot
possession at four times the rate of whites, and blacks at seven
times the rate of whites.

84.   Furthermore, documented civilian complaints about
officer misconduct show that African Americans are the most
likely targets of abuse, but their complaints are largely

16

ignored. According to the City of New York's Civil Complaint
Review Board's ("CCRB") Status Report, dated December and
January 2010, in 2010 African Americans were overrepresented as
alleged victims of police misconduct. Although making up only
23% of New York City's population, they are 58.5% of the alleged
victims in CCRB complaints. On the other hand, whites and
Asians were a disproportionately low percentage of alleged
victims.

      85. The foregoing customs, policies, usages,
practices, procedures and rules of the City of New York and the
NYPD were the direct and proximate cause of the constitutional
violations suffered by plaintiff as alleged herein.

      86. The foregoing customs, policies, usages,
practices, procedures and rules of the City of New York and the
NYPD were the moving force behind the constitutional violations
suffered by plaintiff as alleged herein.

87. The City's failure to act resulted in the violation of plaintiff's constitutional rights as described herein.

**WHEREFORE,** plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a. Compensatory damages in an amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. Costs, interest and attorney's fees, pursuant to 42 U.S.C. § 1988; and

d. Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:     Brooklyn, New York
           July 30, 2013

                              MICHAEL O. HUESTON, ESQ.
                              *Attorney for Plaintiff*
                              16 Court Street, suite 3301
                              Brooklyn, New York 11241
                              (718) 246-2900
                              mhueston@nyc.rr.com
                              By:

                              _____
                              MICHAEL O. HUESTON